UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:21-cv-81270-DMM-WM

MORRIS FLANCBAUM and
SUSAN RIZZUTO,

       Plaintiffs,

v.

THE TYSON GROUP, INC.,
a California corporation,

       Defendant.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS FOR LACK OF JURISDICTION, IMPROPER VENUE
AND, IN THE ALTERNATIVE, TO TRANSFER VENUE**

       Plaintiffs, MORRIS FLANCBAUM and SUSAN RIZZUTO ("Plaintiffs"), by and through their undersigned counsel, hereby file their Response in Opposition to Defendant, THE TYSON GROUP, INC.'s Motion to Dismiss for Lack of Jurisdiction, Improper Venue and, in the Alternative, to Transfer Venue [DE 19].

## I.     INTRODUCTION

       1.      On July 21, 2021, Plaintiffs filed a one count Complaint against Defendant, THE TYSON GROUP, INC. ("Defendant") for breach of contract as it defaulted under a Convertible Promissory Note ("Note") and failed to pay Plaintiffs the outstanding balance owed in excess of Five Hundred Thousand Dollars ($500,000.00), plus 5.5% interest.  [DE 1]

       2.      In response to the Complaint, Defendant filed a Motion to Dismiss for Lack of Jurisdiction, Improper Venue and, in the Alternative, to Transfer Venue ("Motion").  In support of the Motion, Defendant argues that the terms of the subject promissory note required performance of the Note in California, and therefore, there is no basis for jurisdiction under Florida's long arm statute.  Seemingly, this is just a ploy to delay entry of judgment on a claim to which no defense is warranted. Instead of consenting to judgment, Defendant argues that the course of dealings between the parties does not establish the requisite minimum contracts to satisfy the Due Process Clause and subject Defendant to the jurisdiction in Florida.  Further, Defendant argues that venue is improper because the Note designates El Segundo, California as the place of performance and a substantial part of the events or omissions giving rise to the breach of the promissory note occurred

*Flancbaum, et al. v. The Tyson Group*
CASE NO. 9:21-cv-81270-DMM-WM
Page 2

in El Segundo, California.[1]  Alternatively, Defendant argues that the case should be transferred to the Central District of California where the court should exercise jurisdiction over Defendant and venue would be proper.  [DE 19].  However, Defendant's Motion to Dismiss for Lack of Jurisdiction, Improper Venue and, in the Alternative, to Transfer Venue must be denied, as a matter of law.

3.     As specifically argued below,[2] contrary to Defendant's arguments in its Motion to Dismiss, Plaintiffs have established a basis for the Court's personal jurisdiction under Florida's long arm statute.  Contrary to Defendant's assertions, the Note fails to state the place of performance.  As a result, because the Note is silent as to the place of performance, it is presumed that payment would be made by Defendant at Plaintiffs place of residence in Palm Beach County, Florida.[3]  In addition, Plaintiffs also instructed Defendant to wire transfer payments due under the Note to their bank in Florida.  Defendant partially performed its contractual obligations that were due under the Note by wiring a total of Five Hundred Sixteen Thousand Two Hundred Ninety-Five Dollars and Thirty-Two Cents ($516,295.32) to Plaintiffs' bank in Florida.  However, Defendant failed to perform its remaining contractual obligations and breached the Note by failing to wire the remaining funds due under the Note totaling in excess of Five Hundred Thousand Dollars ($500,000.00) to Plaintiffs' bank in Florida.

4.     In addition, Plaintiffs have established a course of dealings between the parties to establish the requisite minimum contracts to satisfy the Due Process Clause and subject Defendant to the jurisdiction of Florida.  At the time that Plaintiff provided the loan The Tyson Group, Plaintiff were residents of Florida.  Also, as Plaintiffs directed, Defendant performed under the Note by wiring payments to Plaintiffs' bank account in Florida that were due under the Note and Defendant breached the Note by failing to perform and wire the remaining funds to Plaintiffs' bank account in Florida which were due under the Note.  In addition, Mr. Flancbaum and representatives of The Tyson Group met in Florida on several occasions to seek additional loans from Plaintiff.

5.     Moreover, Plaintiffs have also established that Florida is the proper venue as, *inter alia*, Plaintiffs reside in Florida, Defendant partially performed its contractual obligations under

---

[1] Plaintiffs' Motion for Summary Judgment is also being filed contemporaneously with the filing of the Response. There is no reason Plaintiffs and the Court should go through additional labor of transferring this case where there is no legitimate defense that can be assert by Defendant here or in California. Notwithstanding, as shown by this Response, and the accompanying Declaration of Morris Flancbaum, jurisdiction is proper here.

[2] *See also* Declaration of Morris Flancbaum is being filed contemporaneous herewith.

[3] It should also be noted that The Tyson Group recognizes – and admits – in its Motion that Plaintiffs received payments under the Note in Florida, not California.

*Flancbaum, et al. v. The Tyson Group*
CASE NO. 9:21-cv-81270-DMM-WM
Page 3

the Note in Florida by wiring partial payments to Plaintiffs' bank account in Florida due under the Note and Defendant breached the Note in Florida by failing to wire the remaining funds to Plaintiffs' bank account in Florida which were due under the Note.

## II.   FACTUAL BACKGROUND

1.      Plaintiffs have been Florida residents since 2019.  (Morris Dec. ¶3).

2.      Plaintiff were approached to provide a loan to a new corporation called "The Tyson Group, Inc." (Morris Dec. ¶4).

3.      Initially, Robert Hickman of The Tyson Group met with Plaintiffs in California a few times and met with representative of The Tyson Group in El Segundo, California to further discuss the business and operational needs of The Tyson Group and to continue negotiating the terms of the promissory note. (Morris Dec. ¶5).

4.      Based on these meeting, the terms of the promissory note were finalized and memorialized into the Convertible Promissory Note (the "Note") by The Tyson Group's general counsel. (Morris Dec. ¶6).

5.      Plaintiffs wired the $1,000,000.00 under the Note from the JPMorgan Chase Bank, N.A. Private Banking Account in Florida to The Tyson Group's bank account.  (Morris Dec. ¶¶7, 9).

6.      An agent of The Tyson Group executed the Note on July 20, 2019.  (Morris Dec. ¶8).

7.      Pursuant to the Note, Defendants was required to repay the loan on or before August 15, 2020 by the maturity of the loan.  (Morris Dec. ¶12).

8.      Thereafter, Robert Hickman and other representatives of The Tyson Group flew several times to Florida to meet Mr. Flancbaum to discuss the business and operational needs of The Tyson Group and to seek further investments from Plaintiff. However, Plaintiffs never loaned or invested any additional funds to The Tyson Group.  (Morris Dec. ¶10).

9.      Because the Note was silent on the place of performance, Plaintiffs directed Defendants to send payments under the Note by wire transfer to their JPMorgan Chase Bank, N.A. Private Banking Account in Florida.  (Morris Dec. ¶14).

10.     Between November 27, 2020 and June 4, 2021, Defendants wired to Plaintiffs' bank account in Florida a total of $516,295.32 as payments under the Note.  (Morris Dec. ¶15).

11.     However, Plaintiffs have not received any additional payments from Defendant since June 4, 2021.  (Morris Dec. ¶16).

*Flancbaum, et al. v. The Tyson Group*
CASE NO. 9:21-cv-81270-DMM-WM
Page 4

12.     The Note matured on August 15, 2021.  Since that time, Defendant has failed to perform its contractual obligations by failing to wire to Plaintiffs' account in Florida the remaining funds due under the Note totaling $572,178.08, plus applicable interest.  (Morris Dec. ¶17).

13.     As a result, Defendants are in default under the Note.  (Morris Dec. ¶18).

### III.     MEMORANDUM OF LAW

**A.     The Court has Specific Personal Jurisdiction over Defendant through Florida's Long-Arm Statute and Such Jurisdiction Does Not Violate Defendant's Due Process Under the Fourteenth Amendment of the United States Constitution and, Therefore, Defendant's Motion to Dismiss for Lack of Jurisdiction Must be Denied.**

The plaintiff "bears the burden of making out a prima facia case for personal jurisdiction by presenting sufficient evidence to withstand a directed verdict motion." *RG Golf Warehouse, Inc. v. Golf Warehouse*., 362 F. Supp.3d 1226, 1232 (M.D. Fla. 2019) (quoting *Thomas v. Brown*, 504 F.App'x 845, 847 (11th Cir. 2013)); *see also Delong v. Washington Mills*, 840 F.2d 843, 845 (11th Cir. 1988).  The defendant must then raise "a meritorious challenge to personal jurisdiction" by submitting evidence "through affidavits, documents or testimony."  *Id*.  "If the defendant provides sufficient evidence, the burden shifts to the plaintiff to prove jurisdiction by affidavit, testimony or documents." Id.  "*If the plaintiff's complaint and the defendant's evidence conflict, the district court must construe all reasonable inferences in favor of plaintiff*."  *Id*. (emphasis added).

When determining whether to exercise personal jurisdiction over a defendant, a federal court sitting in Florida must determine whether (1) sufficient facts have been alleged to bring the action within Florida's long-arm statute; and (2) if Florida's long-arm statute applies, if there are sufficient minimum contact by defendant comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Blitz Telecom Consulting, LLC v. Peerless Network, Inc*., 2014 U.S. Distr. LEXIS 192073, at *3-4 (M.D. Fla. 2014); *Story v. Heartland Payment Sys., LLC*, 461 F. Supp. 3d 1216, 1225 (M.D. Fla. 2020) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009));  see Fed. R. Civ. P. 4(k)(2).

#### i.     *Florida's Long Arm Statute.*

"The Florida long-arm statute provides two bases for the exercise of personal jurisdiction" over a non-resident: general and specific jurisdiction.  *PVC Windoors, Inc. v. Babbitbay Beach*

*Flancbaum, et al. v. The Tyson Group*
CASE NO. 9:21-cv-81270-DMM-WM
Page 5

*Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010). "[G]eneral jurisdiction refers to the power of the forum stat to exercise jurisdiction in any cause of action involving a particular defendant…. *Id.* at 808 n.8. Specific jurisdiction "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." *Id.* at 808.

Here, Plaintiffs assert that Florida's long-arm statute confers specific jurisdiction over Defendant because of its "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state." §48.193(1)(a)(7), *Florida Statues*; *see also RG Golf Warehouse, Inc.*, 362 F. Supp. 3d at 1238. "Allegations that a defendant failed to tender payment in Florida by the terms of the contract are sufficient to bring an action within the purview of section 48.193(1)(a)(7)." *Blitz Telecom Consulting, LLC*, 2014 U.S. Distr. LEXIS 192073, at *3-4; *Power Rental OP CO, LLC v. V.I. Water & Power Auth.*, 2021 U.S. Dist. LEXIS 125096, at *6 (M.D. Fla. 2021) ("Failure to make payments owed under a contract where payment is due to be made in Florida is sufficient to satisfy Section (1)(a)(7) of Florida's long-arm statute.") (internal quotations omitted); *Links Design, Inc. v. Lahr*, 731 F. Supp. 1535, 1538 (M.D. Fla. 1990) ("Allegations that Defendant failed to make payments, per the contract, in Florida is sufficient to bring this actions within the ambit of section 48.193(1)(g).).

In the case at hand, Plaintiffs and Defendants entered into the Note on July 30, 2019. Pursuant to Section 1 of the Note, entitled "Payment," it states:

> The Tyson Group, Inc., a California corporation (the "Company"), its successors and assigns, for valued received, hereby promises to pay the Morris Flancbaum and Susan Rizzuto, JTWROS, or his, or her or its registered assigns (the "Holder") the principal sum of one million and 00/100 Dollars ($1,000,000.00) on August 15, 2020 (the "Maturity Date"). The Company also promises to pay interest (computes on the basis of a 360-day year) from the date hereof on the unpaid balance of such principal amount from time to time outstanding at the simple rate of five and one-half (5 ½%) per annum. Interest shall be due and payable on the Maturity Date.

As alleged in the Complaint, Plaintiffs are residents of Florida since 2018. (Compl. ¶¶1-2); (Morris Dec. ¶3). Contrary to Defendant's argument, the Note is silent on the place of performance so it is presumed to be Plaintiff's place of residence. *See Angiamo Marine, Ltd v. Ocean Marine*, LLC, 2018 U.S. LEXIS 224503, at *6 (S.D. Fla. 2018) ("When a contract is silent as to the place of payment, contract law presumes payment is due at the payee's residence and/or place of business."); *RG Golf Warehouse, Inc.*, 362 F. Supp. 3d at 1238 (Under Florida law, when a "contract is silent as to a place of payment, it is presumed to be the place of the residence of the

payee."). Plaintiffs also directed Defendant to wire transfer payments due under the Note to Plaintiffs' bank account at located JPMorgan Chase Bank, N.A. Private Banking Account in Florida. *See Asinte Partners, LLC v. GTS Mgmt. Co.*, 2016 U.S. Dist. LEXIS 156537, at *7 (S.D. Fla. 2016) (While the agreement did not establish that defendant was required to make payments in Florida, defendants deposited or wired payments into plaintiff's account in Florida, which the court determined was enough for Florida's long-arm statute to confer personal jurisdiction over defendant.). As a result, Plaintiffs' directions further solidified that Defendant was required to perform its contractual obligations under the Note, including making payments to Plaintiffs, in Florida.

Pursuant to Plaintiffs' directions, Defendant made the following payments by wire transfer to Plaintiffs' bank in Florida under the Note:

    1)     $500,000.00 received on November 27, 2020;
    2)     $2,661.17 received on December 24, 2020;
    3)     $2,661.17 received on January 20, 2021; and
    4)     $10,972.98 received on June 4, 2021.
                <u>Totaling</u>: $516,295.32

(Compl. ¶10); (Morris Dec. ¶15). However, Defendant breached the Note and failed to perform its contractual obligations in Florida by failing to wire Plaintiffs the remaining funds that were owed under the Note to Plaintiffs' bank account in Florida totaling $572,178.08, plus the 5 ½% interest applicable under Paragraph 1 of the Note and the penalty interest applicable under Paragraph 16 of the Note.[4] (Compl. ¶¶14-15); (Morris Dec. ¶ 17).

Based on the forgoing, Plaintiffs have asserted sufficient allegations and plead sufficient facts to support that Florida's long-arm statute confers the Court with specific personal jurisdiction over Defendant as Defendant failed to make payments under the Note that were to be wire transferred into Plaintiffs' bank account in Florida to satisfy §48.193(1)(a)(7), *Florida Statutes*.

      ii.     ***Due Process of the Fourteenth Amendment of the United States Constitution.***

---

[4] Pursuant to Paragraph 16 of the Note, entitled "Penalty for Overdue Payment," it states:

    In addition to the payment due as set forth herein, if the Holder has not received payment in full on or before its due date, Company will pay the Holder a penalty of 5.5% of the Principal then due and owing compounded monthly until such times as the Principal and Interest have been paid in full.

*Flancbaum, et al. v. The Tyson Group*
CASE NO. 9:21-cv-81270-DMM-WM
Page 7

Once a federal court determines that Florida's long-arm statute confers specific personal jurisdiction over a defendant, the court must then determine whether exercising specific jurisdiction comports with due process under the Fourteenth Amendment of the United States Constitution. *Sapa Precision Tubing Rockledge, LLC v. Tex-Mex Recycling, LLC*, 2016 U.S. Dist. LEXIS 94588, at *10 (M.D. Fla. 2016). In determining if specific personal jurisdiction comports with due process under the Fourteenth Amendment, federal courts apply a three-part due process test, which examines:

1)    whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum;

2)    whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and

3)    whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*CodeVentures, LLC v. Vital Motion,, Inc.,* 2021 U.S. Dist. LEXIS 55557, at *6 (S.D. Fla. 2021). "The plaintiff bears the burden of establishing the first two prongs [of the test], and if the plaintiff does so, the defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal quotations omitted); *see deMco Techs., Inc. v. C.S. Engineered Castings, Inc.*, 769 So. 2d 1128, 1131 (Fla. 3d DCA 2000) (In conducting a due process analysis, Florida courts have "recognize[d] that when the failure to pay a debt owed in this state, whether as the primary obligor or guarantor, is accompanied by some other related substantial act in Florida that is purposefully directed toward the state or its residents, the exercise of personal jurisdiction over such nonresident defendants is proper.") (citations omitted).

### a.  Claims arise out of or relate to defendant's contacts with the state.

As to the first prong of the due process test, courts focus on "the direct causal relationship among the defendant, the forum, the litigation." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir 2010). In this case, the parties met, discussed and negotiated the terms of the Note, which

Defendant breached by failing to perform its contractual obligations under the Note by failing to wire the remaining funds that were owed under the Note to Plaintiffs' bank account in Florida.

In or about 2019, Plaintiffs were approached about investing in The Tyson Group, a newly formed corporation. (Morris Decl. ¶4). Initially, Mr. Flancbaum met with Robert Hickman, a representative of The Tyson Group, to discuss the company and its need for a business loan. (Morris Dec. ¶5). After the meeting, Mr. Flancbaum became interested in providing a loan to The Tyson Group. To negotiate the terms of a promissory note, Mr. Flancbaum met with Robert Hickman, as well as another representative of The Tyson Group, in California. (Morris Dec. ¶5). Ultimately, based on the negotiated terms, the Note was drafted, finalized and executed by The Tyson Group on or about July 30, 2019. (Morris Dec. ¶¶6, 8). At the time of these meetings and negotiations, Plaintiffs lived and resided in Florida. While some of the meetings between Plaintiff and the representative of The Tyson Group took place in California, the $1,000,000.00 payment was transferred from Plaintiffs' account in Florida to Defendant bank, and payments due under the Note were wire from Defendant's bank account to Plaintiffs' bank account in Florida. (Morris Dec. ¶¶9, 14).

Between November 2019 and June 2021, Defendants sent payments due under the Note by wire transfer to Plaintiffs' bank account in Florida totaling $516,295.32. (Morris Dec. ¶15). However, Defendant breached the Note by failing to perform and wire the remaining funds due under the Note totaling $572,178.08, plus interest and default interest to Plaintiffs' bank account in Florida. (Morris Dec. ¶17).

Based on Plaintiffs and Defendant negotiating the terms of the Note while Plaintiffs resided in Florida and payments were to be made to Plaintiffs in Florida, and then Defendant subsequently breaching the Note by failing to perform and wire all funds to Plaintiffs' bank account in Florida due under the Note, there is a sufficient direct causal relationship between Plaintiff's breach of contract claim and Defendant's direct contacts with Florida.

### b. Purposefully availment of the privilege of conducting activities within the forum state.

"For claims involving contracts, in determining whether a defendant purposefully availed himself of the privilege of conducting activities in the forum states, courts use the traditional minimum contacts test." *Calder v. Jones*, 465 U.S. 783, 788 (1984). "Under the traditional minimum contacts test, a court assesses the nonresident defendant's contacts with the forum state and asks whether those contacts: 1) are related to the plaintiff's cause of action; 2) involve some

act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and 3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Bonczyk v. Julian Keith Levene & Cadiz Music & Digital*, 2020 U.S. Dist. LEXIS 183508, at *32 (M.D. Fla. 2020) (quoting *Louis Vuitton*, 736 F.3d at 1357); see *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267-68 (11th Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)) ("[W]hen inspecting a contractual relationship for minimum contacts, [the Eleventh Circuit] follow[s] a 'highly realistic approach' that focuses on the substance of the transaction: prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing.").

In the case at hand, Plaintiffs' breach of contract claim is directly related to Defendant's contacts with Florida. Specifically, Mr. Flancbaum and Defendant's representative, Robert Hickman, met to initially discuss The Tyson Group and Mr. Flancbaum providing a loan to The Tyson Group. Subsequent to the initial meetings, and Plaintiffs making the loan under the Note, Mr. Flancbaum and representatives of The Tyson Group met in Florida on several occasions to negotiate the terms of potential additional loans that were never memorialized. Once the terms of the subject Note were agreed upon by the parties, the Note was memorialized and executed by The Tyson Group. Plaintiffs directed Defendant to wire transfer payments that were due under the Note to Plaintiffs' bank account in Florida. Defendant wire transferred some of the payments due under the Note to Plaintiffs' bank account in Florida. However, Defendant breached the Note by failing to perform and wire the remaining funds to Plaintiffs' bank account in Florida which were due under the Note. Moreover, Defendant knew that Plaintiffs are residents of Florida, as they essentially admit, and that any claim that arose against Defendant could occur in Florida. California is not the proper venue for this litigation. Based on these direct actions by Defendant in Florida, Defendant purposely availed itself of the privileges of doing business within Florida and should have reasonably anticipated being hauled into a Florida court, upon default.

The terms negotiated were memorialized into the Note and executed by the parties. California was not designated as the proper venue for litigation. Subsequent to entering into the Note, Defendant breached the Note by failing to perform in Florida by failing to wire transfer payments to Plaintiffs' bank account in Florida that were due under the Note. Based on these direct actions by Defendant in Florida, Defendant purposely availed itself of the privileges of doing business within Florida and should have reasonably anticipated being haled into a Florida court, upon default. *See Bonczyk*, 2020 U.S. Dist. LEXIS 183508, at *34

### c. Traditional notions of fair play and substantial justice.

The factors determining with traditional notions of fair play and substantial justice apply are:

1) the burden on defendants;
2) Florida's interest in adjudicating the dispute;
3) Plaintiffs' interest in obtaining convenient and effective relief;
4) the judicial system's interest in resolving disputes in the most efficient way; and
5) the shared interest of the states in furthering fundamental substantive social policies.

*See Bonczyk*, 2020 U.S. Dist. LEXIS 183508, at *37.

In applying these factors to the instant case, the Court exercising jurisdiction over Defendant would not violate traditional notions of fair play and substantial justice. Defendant and its representatives solicited Plaintiffs, who are Florida residents, for a loan.  The parties also negotiated terms of the Note during various meetings at times they were aware Plaintiffs resided in Florida. In addition, Defendant performed but subsequently failed to perform its contractual obligations in Florida.  As a result of Defendant's breach of the Note,  Plaintiffs' injuries occurred in Florida.  Florida has an interest in adjudicating the dispute between Plaintiffs and Defendant as Plaintiffs are Florida residents and Plaintiffs allege they were injured in Florida by Defendant's breach of the Note.  *See Diamond Crystal Brands, Inc. v. Food Movers Int.'l, Inc*., 593 F.3d 1249, 1274 (11th Cir 2010) (holding a Florida court has a "manifest interest in providing an effective means of redress" when a non-resident breached a contract with a resident through non-payment) (internal quotations marks and citation omitted)*; Licciardell v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008) ("Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida."); *Energy Smart Inds., LLC v. Big R of Lamar, Inc.,* 2012 U.S Distr., LEXIS 103991, at *28 (S.D. 2012) (Florida has an interest in redressing an injury suffered by a resident because of a breach contract by a non-resident.). In addition, Plaintiffs' interest in obtaining convenient and effective relief are in Florida. Plaintiff recognizes that Defendant is a California corporation with its principal place of business and some of its witnesses located in California. However, this case involves is a simple default by Defendant under a Note, where no defenses exist. No witnesses are necessary as there is no legitimate defense.  Clearly, under these facts, exercising jurisdiction over Defendant would not violate traditional notions of fair play and substantial justice. *See Bonczyk*, 2020 U.S. Dist. LEXIS

183508, at *39 (holding that defendant's travel from Europe to Florida to conduct business with plaintiff "suggests that the travel aspect of litigating in Florida in not unduly burdensome" as "modern means of communication and travel further reduce the burden of litigating inf Florida.").

For the foregoing reasons, Plaintiffs have sufficiently established a prima facie case that the Court has specific personal jurisdiction over Defendant through Florida's long-arm statute and such jurisdiction does not violate Defendant's due process under the Fourteenth Amendment of the United States Constitution.  Therefore, Defendant's Motion for Lack of Jurisdiction must be denied, as a matter of law.

**B.      Defendant's Motion to Dismiss for Improper Venue Pursuant to Rule 12(b)(3) Must be Denied as Venue is Proper Because a Substantial Part of the Events or Omissions Giving Rise to this Case Occurred in the Southern District of Florida.**

Defendant also seeks to dismiss the Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  "When a defendant challenges venue as improper, the plaintiff bears the burden of showing that the venue selected is proper."  *Santos Camacho v. United States*, U.S. Dist. LEXIS 200256, at * 2 (S.D. Fla. 2019).  Under 28 U.S.C. §1391(b), venue is proper in:

1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §1391(b)(1)-(3); s*ee Epler v. Air Methods Corp.*, 2021 U.S. Dist. LEXIS 104945, at *8 (M.D. Fla. 2021).

In this case, venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the breach of contract claim at issue in this case occurred therein.  Specifically, Plaintiffs are residents of Palm Beach County, Florida and have been since 2018. Representatives of The Tyson Group approached Plaintiffs about providing a loan to The Tyson Group while Plaintiffs were residents of Florida.  Initially, Mr. Flancbaum and Robert Hickman of The Tyson Group met in Florida to discuss The Tyson Group and concerning Plaintiffs providing a loan to The Tyson Group. (Morris Dec. ¶5).

*Flancbaum, et al. v. The Tyson Group*
CASE NO. 9:21-cv-81270-DMM-WM
Page 12

Subsequent to the initial meeting, Mr. Flancbaum and representatives of The Tyson Group met in California to negotiate the terms of the promissory note. (Morris Dec. ¶5). Once the terms of the Note were agreed upon by the parties, the Note was memorialized and executed by the parties. (Morris Dec. ¶6). Defendant erroneously claims that the Note states the place of performance of its contractual obligations was designated as El Segundo, California. However, there is no provision in the Note that specifically states that El Segundo, California is the place of performance by the Plaintiffs. As a result of the Note being silent on the place of performance, under Florida law, payment was due at Plaintiffs' place of residence in Palm Beach County, Florida. *See Angiamo Marine, Ltd v. Ocean Marine*, LLC, 2018 U.S. LEXIS 224503, at *6 (S.D. Fla. 2018); *RG Golf Warehouse, Inc. v. Golf Warehouse*., 362 F. Supp.3d 1226, 1238 (M.D. Fla. 2019). Further, Plaintiffs directed Defendant to wire transfer payments that were due under the Note to Plaintiffs' bank account in Florida. *See Asinte Partners, LLC v. GTS Mgmt. Co*., 2016 U.S. Dist. LEXIS 156537, at *7 (S.D. Fla. 2016). Defendant wire transferred the payments that were made to Plaintiffs' bank account in Florida. Nonetheless, the omission giving rise to this action occurred in in Florida when Defendant breached the Note by failing to perform and wire the remaining funds to Plaintiffs' bank account in Florida which were due under the Note. *See Sinclair v. Wilde, Ltd. V. TWA Int'l*., 2020 U.S. Dist. LEXIS 69682, *8-9 (S.D. Fla. 2020); *see also Key Equipment Finance, Inc. v. Overend*, 2013 U.S. Dist. LEXIS 200680, at 7-8 (N.D. Ga. 2013).

Based on the forgoing, venue is proper in the Southern District of Florida. Therefore, Defendant's Motion to Dismiss for Improper Venue pursuant to Florida Rule of Civil Procedure 12(b)(3) must be denied, as a matter of law.[5]

### C.  **Defendant's Motion to Dismiss Based on *Forum Non Coveniens* Must Be Denied Because the Southern District of Florida is the Proper Forum.**

In addition, Defendant seeks to dismiss the complaint based on *forum non coveniens.* To obtain dismissal under *forum non coveniens,* the moving party must demonstrate the following:

    1)    an adequate alternate forum is available;

    2)    the public and private interest factors weigh in favor of dismissal; and

    3)    the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.

---

[5] In the unlikely event that the Court finds venue is improper in the Southern District of Florida, Plaintiffs request that the Court transfer the case to the Central District of California pursuant to 28 U.S.C. §1406 rather than dismissing the case.

*Flancbaum, et al. v. The Tyson Group*
CASE NO. 9:21-cv-81270-DMM-WM
Page 13

*Bitet v. Holding Riu Hotels*, 2016 U.S. Dist LEXIS 201398, at 18-19 (S.D. Fla. 2016) (quoting *Ochoa v. Empresad ICA, S.A.B. DE CV*, 600 F.App'x 725, 726 (11th Cir 2015).

Here, as more specifically argued in Section D below, Defendant fails to demonstrate sufficient public and private interest factors that weigh in favor of dismissal (or transferring this case to the Central District of California) based on *forum non coveniens*.

### i.        *Private Interest Factors.*

In regard to private interest factors, Plaintiff's potential witnesses, to the extent needed at all to establish the unrefuted default under the Note, with no viable defenses, are located in Florida and California. Defendant asserts that its potential witnesses are located in California, Minnesota **and** Colorado. Defendant's witnesses located in Minnesota and Colorado would be required to travel and assume travel expenses whether the case was in Florida or California. Defendant also asserts that witnesses in California and presumably in Minnesota and Colorado must be subpoenaed for trial,[6] which would occur if the case was in Florida or California. In addition, Defendant asserts that all relevant documents are located in California, including Defendant's books and records. However, with the age of technology, any and all relevant documents should be available electronically. The documents that are not available electronically can be easily converted to electronic format so that all parties can access the documents electronically. These assertions are specious at best.

### ii.        *Private Interest Factors.*

In regard to the public interest factors, Defendant argues that while the Central District of California has more cases than the Southern District of Florida, the Central District of California is closing cases at a higher percentage rate. (MTD pp. 17-18). However, Judge Donald W. Middlebrooks and his staff at the Southern District of Florida are more than capable of handling and closing out this case in a timely fashion. This is not a complicated case. The Complaint includes one count concerning a breach of a promissory note that Defendant failed to perform in Florida. There are no known viable defenses, and none have been articulated, since none actually exist.   Judge Donald W. Middlebrooks and the Southern District of Florida are more than competent to apply the laws of California (which are substantially similar to those in Florida concerning a simple breach of contract), while protecting the Florida's interest in providing

---

[6] We simply cannot imagine that would occur as we are aware of no viable defense to Defendant's default under the Note, and do not believe an such defense exists.

Plaintiffs, its residents, the proper forum for redressing the injuries they have suffered as a result of Defendant's breach under the Note.

Further, Florida, not California as Defendants argue, has a local interest in having localized controversies decided at home.  Plaintiffs are residents of Florida.  Mr. Flancbaum and Defendant's representative negotiated terms of the Note to be performed by making payments to Plaintiffs where they reside, which is in Florida. Defendant was required but failed to perform its contractual obligations under the Note in Florida.  Therefore, Florida has an interest in adjudicating the dispute between Plaintiffs and Defendant as Plaintiffs are Florida residents and Plaintiffs allege they were injured in Florida by Defendant's breach under the Note.

Based on the foregoing, the public and private interest factors as asserted by Defendant do not weigh in favor of dismissing (or transferring this case to the Central District of California). Therefore, Defendant's Motion to Dismiss Based on *forum non coveniens* must be denied, as a matter of law.

**D.**     **Defendant's Motion to Transfer of Venue Must Be Denied the Southern District of Florida is the Proper Venue.**

Alternatively, Defendant argues that the Court should transfer the venue to the Central District of California because the place of performance of the Note is in El Segundo, California, the Note requires certain actions take place in El Segundo, California is the choice of law, Defendant is located in El Segundo, and prior, during and after execution of the Note, Plaintiffs traveled to El Segundo and the greater Los Angeles area to conduct business with Defendant related to the Note.  (MTD p. 16).  However, these factors are not sufficient to support for this Court to transfer venue to the Central District of California.

A motion to transfer venue is governed by 28 U.S.C. §1404(a).  Under 28 U.S.C. §1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a). Other than to assist the Defendant to delay this matter, there is no convenience by transferring this action to California.  Courts have a broad discretion under 28 U.S.C. §1404(a) to transfer venue.  However, "federal courts traditionally have accorded a plaintiff's choice of forum considerable deference." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).  A plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir. 1996).  Therefore, "[i]t is the movant's burden to establish

that a case should be transferred to the suggested forum in the interests of convenience and justice." *Nat'l Trust Ins. Co*., 223 F. Supp.3d at 1242.  A defendant bears a heavy burden when seeking to disrupt a plaintiff's chosen venue.  *Sapa Precision Tubing Rockledge, LLC,* 2016 U.S. Dist. LEXIS 94588, at *18 (M.D. Fla. 2016).

In considering a motion to transfer, the court engages in a two-step analysis.  "The court must first determine, as a threshold matter, whether the case could have been filed in the proposed district." *Nat'l Trust Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co*., 223 F. Supp.3d 1236, 1242 (M.D. Fla. 2016). "Next, the court must consider "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice."  *Id*. (quoting *Eye Care Int.'l, Inc. v. Underhill*, 119 F. Supp.2d 1313, 1318 (M.D. Fla. 2000)). While the case could have been filed in California, there is little if any convenience to the parties and witnesses or the interest of justice through transferring this case to California. Rather, the contrary is likely true.

In determining the second prong of the analysis, courts in the Eleventh Circuit consider the following factors:

1)   the convenience of the witnesses;
2)   the location of relevant documents and the relative ease of access to sources of proof;
3)   the convenience of the parties;
4)   the locus of operative facts;
5)   the availability of process to compel the attendance of unwilling witnesses;
6)   the relative means of the parties;
7)   the forum's familiarity with the governing law;
8)   the weight accorded a plaintiff's choice of forum; and
9)   trial efficiency and the interest of justice, based on the totality of the circumstances.

*Epler*, 2021 U.S. Dist. LEXIS 104945, at *5-6 (quoting *Kelling v. Hartford Life & Accident Ins*., 961 F.Supp.2d 1216, 1218 (M.D. Fla. 2013)).  After the Court balances these factors, the Court must find that the transferring venue is unwarranted and deny Defendant's Motion to Transfer Venue.

### i.      *Sufficiency of Proposed Jurisdiction and Venue.*

Under 28 U.S.C. §1404(a), the proposed transferee court is required to have personal and subject-matter jurisdiction and to offer an appropriate venue.  *DeLorenzo v. HP Enter. Servs*., LLC, 79 F.Supp.3d 1277, 1280 (M.D. Fla. 2015).  Plaintiffs contest that this matter should have been brought in Central District of California as proposed by Defendant.  Admittedly, Mr. Flancbaum

met representatives, including Robert Hickman, of The Tyson Group in El Segundo, California to discuss The Tyson Group and negotiate the terms of the Note. However, that is Plaintiffs' only related connection to Central District of California as proposed by Defendant.

Plaintiffs reside in Florida. Mr. Flancbaum traveled to El Segundo, California to meet with representatives of The Tyson Group to discuss The Tyson Group and to negotiate the terms of the Note. Plaintiffs and Defendant ultimately agreed upon the terms of the Note that was executed by Defendant, that was funded by Plaintiffs from their bank account in Florida and paid by Defendant by wire transfer into Plaintiffs' bank account in Florida. Moreover, the Note is silent as to place of payment. As a result, under Florida law, the place of payment is Plaintiffs' residence, which is located in Palm Beach County, Florida. Plaintiffs also directed Defendant to wire transfer payments of the principal sum due under the Note to Plaintiffs' bank account in Florida. (Morris Aff. ¶¶14-15). Therefore, jurisdiction and venue is not proper in the Central District of California as proposed by Defendant and this factor weighs against transferring venue.

> ### ii.     *Whether transfer would be for the convenience of the parties, witnesses and in the interest of justice.*

In determining the second prong of the analysis in considering whether to transfer venue, the Court must determine whether the following factors clearly outweigh Plaintiffs' choice of forum such that the convenience of the parties and interest of justice would be furthered by transferring this action. *See SMS Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100-01 (11th Cir. 2004) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). To support transferring the case to the Central District of California, Defendant asserts that litigating in Florida would be an inconvenience because the witnesses are located in California, Minnesota and Colorado. (MTD p. 17). However, the witnesses in Minnesota and Colorado would be required to travel whether the case was in California or Florida. Indeed, to the extent any witness is needed at all, they can testify electronically or otherwise make themselves available to testify. The facts of this case are not complex. There is nothing miraculous about the testimony to establish the terms of the Note and that payment has not been made as agreed, establishing a breach. Nothing complex has been demonstrated to apply to testimony of the Defendant such that this factor should be afforded substantial merit. Moreover, no other factors apply to the relationship of the parties, such that this factor would have any factual merit.

*Flancbaum, et al. v. The Tyson Group*
CASE NO. 9:21-cv-81270-DMM-WM
Page 17

Defendants also allude that Plaintiffs are more financially capable to litigate the case in California because they are wealthy people, that have a multimillion-dollar real estate portfolio and operate successful businesses. *Id.* This is irrelevant. Nonetheless, Plaintiffs should not be required to pay for the litigation because Defendant contends financial wealth should be considered as a factor. Defendant is a corporation that presumably should have the financial resources to litigate within any forum. There is nothing here that suggests Defendant is in some way prejudiced by litigating its liability under a Note in Florida, where no known defense is believed to exist to enforcement. Thus, this factor weighs against transferring the case to the Central District of California.

> a.      **The convenience of the parties, witnesses and location of relevant documents.**

The factors of the convenience of the parties, witnesses and location of relevant documents do not weigh heavily in favor of transfer. Specifically, Plaintiffs are residents of Florida. Defendant is a California corporation with its place of business located in El Segundo, California. Plaintiff's potential witnesses are located in Florida and California. Defendant asserts that its potential witnesses are located in California, Minnesota **and** Colorado. (MTD. P. 17); *see Capella Photonics Inc. v. Cisco Sys., Inc.*, U.S. Dist. LEXIS 100283, at *5 (S.D. Fla. 2014) (Merely shifting inconvenience from one party to another is an insufficient basis for transfer.). Again, this is a simple breach of contract note case where witnesses will play, at best, a secondary role if any as the Note exists (is admitted in fact), default has occurred, which is believed to be unrefuted, and there is no known or available defense to enforcement and entry of judgment. A motion for summary judgment is being filed contemporaneously with this motion. With the age of technology, any and all relevant documents should be available electronically. These purported considerations are asserted to involve a mechanism for potential delay, nothing more. The documents, if any, that are not available electronically can be easily converted to electronic format so that all parties can access the documents electronically. *See Watson v. Community Educ. Ctrs., Inc.*, 2011 U.S. Dist. LEXIS 89520, *13 (M.D. Fla. 2011) ("Modern technology largely neutralizes traditional obstacles to providing relevant documents and access to providing relevant documents and access to proof."). There would be few, if any, such documents in any event, as the Note is either in default or it is not, and there is a viable defense to enforcement or there is not. No defense has so far been stated by Defendant, and none is believed to exist. This factor is sought to be invoked for delay purposes, nothing more, and nothing can actually be demonstrated to the contrary

b. **The locus of operative facts.**

The factor of the locus of operative acts does not weigh in favor of transfer. The facts here are simple and apparently not contested. "In determining the locus of operative facts, the court must look at the site of the events from which the claim arises." *Nat'l Tr. Ins. Co. v. Penn. Nat'l Mut. Cas. Ins*. Co, 223 F.Supp.3d 1236, 1245 (M.D. Fla. 2016) (internal quotations omitted). In this case, the claim arises in Florida as Defendant breached the contract in Florida as it failed to perform its contractual obligations under the Note by failing to make payments due under the Note to the Plaintiffs where they reside in Florida.. Specifically, pursuant to the Note the principal sum $1,000,000.00 was to be paid by Defendant to Plaintiff by the maturity date of August 15, 2020. The Note is silent as to place of payment. Therefore, under Florida law, the place of payment is Plaintiffs' residence, which is located in Palm Beach County, Florida. Plaintiffs also directed Defendant to wire transfer payments of the principal sum due under the Note to Plaintiffs' bank account in Florida. Defendant paid by a total of $516,295.32 by wire transfer to Plaintiffs' bank account in Florida between November 2020 and June 2021. However, Defendant breached the Note and failed to perform its contractual obligations in Florida by failing to wire to Plaintiffs the remaining funds that were owed under the Note to Plaintiffs' bank account in Florida totaling $572,178.08, plus the 5 ½% interest applicable under Paragraph 1 of the Note and the penalty interest applicable under Paragraph 16 of the Note. Therefore, this factor weighs against transferring venue.

c. **The availability of process to compel the attendance of unwilling witnesses.**

The availability of process to compel the attendance of unwilling witnesses also does not weigh in favor of transfer. Defendant argues that some of its witnesses are located in California but are not employed by Defendant and "the parties would benefit from compulsory process for their attendance in California." (MTD p. 17). Meaning, Defendant would have to subpoena certain witnesses whether the trial was in California or Florida. Notably, Defendant does not state in any meaningful way how the testimony of any witnesses in California would bear on any relevant or material issue in dispute, if any. Defendant also states that potential witnesses with relevant knowledge are located in Minnesota and Colorado, which may also require compulsory process for their attendance at trial. But relevant knowledge is not sufficient to create an issue of fact in this very straight-forward breach of contract case. Absent some showing of an actual issue in dispute, Plaintiffs submit that this Court should find that this Defendant's Motion is simply an

Case 9:21-cv-81270-DMM   Document 25   Entered on FLSD Docket 09/27/2021   Page 19 of 21
*Flancbaum, et al. v. The Tyson Group*
CASE NO. 9:21-cv-81270-DMM-WM
Page 19

unwarranted delay tactic.  Indeed, while Defendant's assertion concerning what appear to be largely unnecessary and irrelevant witnesses to the issues required to be adjudicated here, if indeed needed (which is really a stretch to establish liability or a viable defense to the Note, which probably does not exist), Defendant would be required to seek the testimony of witnesses in various locations whether it took place in California or Florida.  At best, this appears to be a mildly irrelevant factor in this case.

**d.**         **The relative means of the parties.**

Defendant argues that because Plaintiffs are successful and wealthy people that they assert maintain a multimillion-dollar real estate portfolio that the case should be transferred because they can afford to litigate in California.  Whether true or not, this purported factor should not be considered by this Court.  (*See* MTD p. 17).  Plaintiffs should not be financially responsible for maintaining a case based on a particular forum, particularly where the Defendant failed in its contractual obligations.  Defendant is a California corporation and presumably should have the financial means to litigate within any forum.  Defendant's representatives traveled several times to Florida to meet with Mr. Flancbaum to seek to negotiate the terms of additional loans. . *See Bonczyk*, 2020 U.S. Dist. LEXIS 183508, at *39 (holding that defendant's travel from Europe to Florida to conduct business with plaintiff "suggests that the travel aspect of litigating in Florida in not unduly burdensome" as "modern means of communication and travel further reduce the burden of litigating in Florida.").  Subsequently, Defendant entered into a Note with Plaintiffs and guaranteed to repay the Note by the maturity date.  Plaintiffs took certain financial risks entering into the Note with Defendants and then Defendant defaulted under the terms of the Note. Also, at the time Defendant entered into the Note, Defendant should have known of the risks of being sued by Plaintiffs in a Florida and the financial costs of being sued if it defaulted under the Note.  Therefore, this factor should weigh against transferring venue.

**e.**         **The forum's familiarity with the governing law.**

While Section 13 of the Note provides that the laws of the State of California govern, the Court is competent to apply the laws of California, particularly since this action concerns a simple breach of contract,  while protecting the state's interest in providing Plaintiffs, its residents, the proper forum for redressing the injuries they have suffered as a result of Defendant's breach of the Note.  This factor certainly has little if any weight to militate if factor of this action  being transferred.

f.            **The weight accorded a plaintiff's choice of forum.**

As stated above, a plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson,* 74 F.3d at 260.  In this case, Florida is Plaintiffs' home forum and Plaintiffs' choice of venue, which should not be disturbed. Therefore, this factor weighs against transferring venue.

g.            **Trial efficiency and the interest of justice, based on the totality of the circumstances.**

When considering whether interest of justice favor venue transfer, courts evaluate "[a]ccess to evidence, availability of witness, the costs of obtaining witnesses, the possibility of a jury view, and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Tommy Bahama Group, Inc. v. The Walking Co*., U.S. Dist. LEXIS 83136, at *2 (N.D. GA 2007). As addressed above, this is a simple case for non-payment and default under a promissory note. The evidence should be accessible through electronic format and to the extent that witnesses are even necessary, potential witnesses are located in Florida, California, Colorado and Minnesota. Defendant admitted that it would have to subpoena many of its witnesses in California, which may also apply to witnesses located in Colorado and Minnesota. This sounds like theory rather than reality, as there are no defenses known to enforcement of the Note, and no witnesses for the defense have been shown to even theoretically be necessary. But if such witnesses were necessary or required, which is highly doubtful, Defendants' witnesses in Colorado and Minnesota would be required to travel whether the case was in California or Florida or could testify electronically. But notwithstanding any of these at best minor considerations, Defendant's performance under the Note occurred in Florida and Defendant failed to perform and breached the Note in Florida.

Based on the foregoing reasons, the Court should deny Defendant's Motion.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Jurisdiction, Improper Venue and, in the Alternative, to Transfer Venue must be denied and order Defendant to file a response to the Complaint without further delay.  However, if the Court should determine it lacks jurisdiction and venue is proper in Central District of California, Plaintiffs respectfully request that the Court transfer the case to the Central District of California pursuant to 28 U.S.C. §1406 rather than dismissing the case.

*Flancbaum, et al. v. The Tyson Group*
CASE NO. 9:21-cv-81270-DMM-WM
Page 21

Respectfully submitted,

**OSHEROW, PLLC**
*Counsel for Plaintiff*
2101 N.W. Corporate Blvd.
Suite 410
Boca Raton, Florida 33431
Telephone: (561) 257-0880

By:    s/ *Mark R. Osherow*

**MARK R. OSHEROW**
Florida Bar No: 997013
mark@osherowpllc.com
eservice@osherowpllc.com
**KENYETTA N. ALEXANDER**
Florida Bar No: 36815
kenyetta@osherowpllc.com
eservice@osherowpllc.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of September 2021, a true and correct copy of the foregoing was served through the District Court's CM/ECF portal on all counsel of record on the Service List below.

## SERVICE LIST

Brett M. Amron, Esq.
Lissette M. Carreras, Esq.
**Bast Amron LLP**
*Counsel for Defendant, The Tyson Group, Inc.*
Sun Trust International Center
One SE 3rd Ave., Suite 1400, Miami, FL 33131
Email: bamron@bastamron.com
        lcarreras@bastamron.com
        kjones@bastamron.com

By:  s/ *Mark R. Osherow*

**MARK R. OSHEROW**
Florida Bar No.: 997013